Tallmadge E. Brown *vs.* District of Columbia.

Equity.    No. 7329.

{ Decided June 2, 1884.
{ The Chief Justice and Justices Hagner and James sitting.

1. The purchase of a product does not constitute the purchaser an infringer of the patent for the machine or process by which it is produced.

2. The advantages claimed under patent No. 94,062, issued August 24, 1869, for the paving block therein described are purely fanciful, and the block has no patentable novelty.

3. Patent No. 101,590, also for paving block, is likewise void under either of the two constructions which the claim is susceptible of. Construed as a claim for a new arrangement of paving blocks of a known shape without reference to their material, it was anticipated by the English patent granted Lindsay in June, 1825. Construed as a claim for the application of a known arrangement to a new material, it would not be a patentable novelty.

#### STATEMENT OF THE CASE.

This case having been heard below was appealed to the General Term where, upon a full hearing, Mr. Chief Justice Cartter, after commenting on the facts, announced that the court had concluded to affirm the decree for the reasons stated in the opinion delivered by Mr. Justice Cox in the court below, which opinion was as follows:

Mr. Justice Cox:

The complainant claims for the infringement of three several patents held under various assignments.

The District of Columbia is charged with having caused to be laid down for public use, and without license from the owners of the patents, several patented pavements, and using patented wooden blocks, and using a patented method of producing them.

Patent No. 94,063, issued to Ballad, and afterwards partially assigned to complainant, was for a method of cutting blocks for a wooden pavement so as to form by two cuts, or one cut and one splitting, two finished blocks with top and bottom level or in parallel, and the sides beveled, one side being inclined with the fibre, and without waste of material.

There is no evidence in the cause that the authorities of

the District of Columbia, or their agents, had anything to do with the production of blocks to be used on the streets of the kind described, or of any other kind. These blocks were furnished under contracts, and if any one is guilty of infringing this patent, it was the contractor, and not the District. The purchase of a product does not constitute the purchaser an infringer of the patent for the machine or process by which it is produced.

Another patent alleged to be infringed is No. 94,062, issued to Ballard August 24, 1869.

This is for two things, viz.:

1. The block itself before described as an article of manufacture, i. e., a wedge-shaped block having the grain running parallel to one and oblique to the other of their beveled sides; and—

2. A wooden pavement constructed of these blocks.

That wedge-shaped blocks of wood for pavements were not new when this patent was applied for, it is substantially admitted in the application. And, indeed, they are described both in Cowing's previous application of 1865, with one beveled side, and in Miller & Mason's patent of 1868, with both sides beveled.

The advantages claimed for the block having the grain parallel with one beveled side, upon which the whole claim to novelty rests, are, in my judgment, purely fanciful, and this block has no patentable novelty. If so, neither is there any patentable novelty in a street laid with this kind of block, and having that only as its merit. I found my judgment, as to this, both on the testimony and ocular inspection.

I do not think, therefore, that any case is made out of an actionable infringement as to patents Nos. 94,062 and 94,063.

The more difficult question relates to patent No. 101,590, originally applied for by Turner Cowing in 1865, but afterwards issued to the complainant, his assignee, in 1870.

The defendant insists that this patent also is void for want of novelty, and in its answer gives notice of several prior patents, English and American, which are supposed to anticipate the alleged invention.

A memorandum of these, in the order of their dates, is as follows:

*Chambers' Patent (English),* 1824.—*Nature of the Invention.*

" Consists in an arrangement of conical-formed stones, &c., placed on their natural bases, cemented together at their lower extremities, and having their remaining interstices filled with loose materials insoluble in water."

He proposes, however, for all ordinary pavements, to make use of stones broken and hewn in the manner in which they are usually prepared for paving, but taking care, in their application to the said improved pavement or carriageway, always to lay their natural bases or largest end downwards, which is the exact reverse of the mode adopted by pavers.

*Lindsay Patent (English), June,* 1825.

Describes his street as—

" Paved with the common or usual-sized paving stones, but the method of arranging them is as follows: Instead of laying them with the broadest ends upwards, I lay them with their broadest ends downwards, and as each stone is made of a wedge form, this leaves a considerable space open between the stones; these I close with smaller stones of a wedge form, which, being carefully placed and well rammed down, after a sufficient quantity of fine gravel or grout has been worked between them, will make a pavement nearly as substantial as a solid sheet of granite."

*Nicholson Patent,* 1854 ; *Reissue,* 1867.

" Board or other foundation made water-proof; square blocks in transverse rows, with spacing strips between to make a groove, the groove to be filled with broken stone, gravel and tar, or other like materials."

*Cowing's Patent No.* 101,590.—*Application in* 1865, *issued in* 1869.

First application—

" The nature of my invention consists in providing and arranging blocks of a peculiar shape in manner to form

wedge-shaped crevices for the reception of earth or gravel, and wherein such earth and gravel will be retained to act as a key to bind and confine the blocks in their place."

The amended claim in 1869 is for "a wood pavement composed of blocks, each side having a single plane surface, and one or more of the sides being inclined, and the blocks being so laid on their larger end as to form wedge-shaped grooves or spaces to receive concrete or other suitable filling."

It will thus be seen that Cowing does not claim the use of wood as new in the construction of pavements; nor does he ever claim the use of wedge-shaped blocks as new, for he expressly disclaims a pavement composed of wedge-shaped wooden blocks when they are laid alternately on the larger and smaller end. But what he claims is, substantially, the collocation or arrangement of the blocks, so as to leave wedge-shaped grooves or spaces between them to receive concrete or other suitable filling to act as a key to bind the blocks together.

This claim may be susceptible of two constructions:

1. It may be construed to be a claim for a new arrangement of paving blocks of a known shape, without reference to their material; or,

2. It may be a claim for the application of a known arrangement to a new material, *i. e.*, wood instead of stone.

If the first, it seems to me that it was anticipated by the patent of Lindsay of the year 1825.

He proposes to use wedge-shaped stone blocks, with the large end downwards, and fill in the wedge-shaped crevices with small wedges of stone, gravel and grout, thus accomplishing precisely the same end proposed by Cowing.

It seems to me that this is the proper construction of Cowing's claim. He lays no stress upon the use of wood. He says nothing about the filling being forced by ramming into the fibre of the wood, as does the witness for complainant. But finding the material actually in use or coming in use, but without special reference to that, he proceeds to invent, as he supposes, a novel mode of using it, so as to have a compact and durable street surface.

64

But if the second construction be the proper one, I should say that the substitution of a new material in a known device or arrangement or mode of construction of a street would not, according to the decisions of the Supreme Court, be a patentable novelty.

On these grounds, I feel constrained to hold that Cowing's patent cannot be sustained, and consequently the bill of complaint must be dismissed.